UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CLAYTON ROUECHE,, <br><br> Defendant. | NO. CR07-344RSL <br><br> ORDER DENYING DEFENDANT'S MOTION FOR DISCOVERY OF EVIDENCE RE: JOINT INVESTIGATION |

**I. INTRODUCTION**

This matter comes before the Court on "Defendant Roueche's Motion for Discovery of Evidence Re: Joint Investigation," Dkt. #178. Defendant asks the Court to "direct the Government to produce additional information relating to the joint investigation that is the foundation of this case." Id. at 5. Specifically, defendant seeks information pertaining to the investigation conducted by Canadian authorities. The government contends that it does not have full or complete access to the investigation of Canadian law enforcement and states that "[w]hatever the Canadian government turned over, the United States government has turned over to the defendant," Dkt. #229 at 2. For the reasons set forth below, the Court denies defendant's motion.

ORDER DENYING DEFENDANT'S
MOTION FOR DISCOVERY OF
EVIDENCE RE: JOINT
INVESTIGATION - 1

**II. DISCUSSION**

**A. Background**

Defendant Roueche is a Canadian citizen who is currently charged with several narcotic trafficking related offenses as part of his membership in the "UN Gang" of British Columbia. On May 17, 2008, he was arrested in Dallas, Texas after he was denied entry into Mexico because of his outstanding arrest warrant in this District. During its investigation of defendant, U.S. Immigration and Customs Enforcement ("ICE") was in frequent contact with the Combined Forces Special Enforcement Unit of British Columbia ("CFSEU"), which was conducting its own investigation of persons believed to be members and/or associates of the UN Gang. U.S. and Canadian law enforcement officials shared information and intelligence regarding defendant. Upon receiving information from ICE officials that defendant had been arrested, CFSEU searched defendant's residence in Canada. Moreover, the government intends to rely on wiretaps and other evidence obtained by CFSEU during the trial of this case. However, the CD-ROM turned over by the Canadian government does not contain the applications or affidavits made in support of the Canadian Court orders authorizing those searches and interceptions.

**B. Analysis**

The parties primarily dispute whether this case involves a joint operation between the U.S. and Canadian governments.[1] The issue of what constitutes a joint investigation usually arises in the context of a motion to suppress. The Fourth Amendment exclusionary rule

---

[1] Defendant suggests that, based on its previous representations in its motion for detention, Dkt. #35 at 1-2, and in the press, Dkt. #179, Appx. A, the government should be estopped from claiming that this case did not involve a joint investigation. Dkt. #178 at 8. But the Court's determination of what constitutes a joint investigation is based on the underlying circumstances of each case, not on statements made in unrelated motions and in news articles. A "joint investigation" has a legal meaning that bears significant legal consequences in the course of trial, and the government's choice of words cannot obviate the Court's analysis of the issue.

ORDER DENYING DEFENDANT'S
MOTION FOR DISCOVERY OF
EVIDENCE RE: JOINT
INVESTIGATION - 2

generally "does not apply to foreign searches by foreign officials in enforcement of foreign law," United States v. Rose, 570 F.2d 1358, 1361 (9th Cir. 1978), unless "American law enforcement officials participated in the foreign search, or [] the foreign authorities actually conducting the search were acting as agents for their American counterparts," id. at 1362 (quoting United States v. Morrow, 537 F.2d 120, 139 (5th Cir. 1976); see also Stonehill v. United States, 405 F.2d 738, 743 (9th Cir. 1968) ("Thus, the Fourth Amendment could apply to raids by foreign officials only if Federal agents so substantially participated in the raids so as to convert them into joint ventures between the United States and the foreign officials.").[2]

Defendant contends that "this case involves a level of collaboration and cooperation that is well beyond the routine," Dkt. #220 at 3, and points to several aspects of the case that suggest that this prosecution is the product of a joint venture, id. at 4-5. Specifically, defendant notes that law enforcement authorities in the United States and Canada have shared information and intelligence on an ongoing basis over several years, have "worked together" to arrange defendant's arrest in Texas, and have "worked cooperatively" to support the investigation and prosecution of defendant in the United States. Id. at 4-5. To be sure, the extent of the communication and support between the two governments indicates a significant level of cooperation in their attempts to investigate and apprehend a common target.

The case law, however, suggests that cooperation alone does not automatically fuse two separate investigations into a joint venture. The Ninth Circuit has found no joint venture where U.S. officials conveyed suspicions leading to a search by foreign authorities, Rose, 570 F.2d at 1362, obtained records seized pursuant to a foreign search, Stonehill, 405 F.2d at 741, and assisted in interpreting during the questioning of suspects, United States v. Trenary, 473 F.2d

---

[2] The other exception to the general rule applies to situations in which federal officials have induced foreign police to "engage in conduct that shock[s] the conscience," Birdsell v. United States, 346 F.2d 775, 782 n.10 (5th Cir. 1965); Rose, 570 F.2d at 1362. Defendant makes no such allegation here.

ORDER DENYING DEFENDANT'S
MOTION FOR DISCOVERY OF
EVIDENCE RE: JOINT
INVESTIGATION - 3

680, 681 (9th Cir. 1973).

But the Court need not decide today whether the congruent efforts of the U.S. and Canadian governments rose to the level of a joint investigation. As defendant aptly notes, Dkt. #220 at 1, this is a discovery motion, not a motion to suppress, and the sole question before the Court is whether the government has failed to abide by its obligation to disclose the relevant evidence in its possession, see Fed. R. Crim. P. 16; Jencks Act, 18 U.S.C. § 3500, including exculpatory material as required by Brady v. Maryland, 373 U.S. 83 (1963). Fed. R. Crim. P. 16 and the Jencks Act require the government to turn over certain kinds of evidence within its "possession, custody or control." United States v. Friedman, 593 F.2d 109, 119-20 (9th Cir. 1979). Defendant suggests that because this prosecution is a result of a joint investigation, the requested information is in the constructive possession of the United States and therefore the government should be compelled to produce it. But "even in the course of a joint investigation undertaken by United States and foreign law enforcement officials[,] the most the Jencks Act requires of United States officials [is] a good faith effort to obtain the [evidence] in the possession of the foreign government." United States v. Paternina-Vergara, 749 F.2d 993, 998 (2d Cir. 1984). Thus, the Court must decide only whether the government has demonstrated good faith in attempting to obtain the requested information from the Canadian officials.

The Assistant United States Attorney assigned to the case first received information from CFSEU after defendant's arrest in May 2008. Declaration of Susan M. Roe, Dkt. #229, Attach. A ¶ 2. In July 2008 and again in September 2008, she met with CFSEU personnel who shared some of the results of their investigation with her. Id. ¶ 3. According to Ms. Roe, "[n]either I nor the [ICE] agents were allowed free and unfettered access to their investigation. Rather, CFSEU determined what information, reports, and intercepts it was willing to share with the United States for this prosecution." Id. After the September 2008 meeting, Ms. Roe requested "all exculpatory evidence" from CFSEU. Id. ¶ 4. In response, CFSEU sent one disk, a print-out

ORDER DENYING DEFENDANT'S
MOTION FOR DISCOVERY OF
EVIDENCE RE: JOINT
INVESTIGATION - 4

of the written materials, and a letter indicating that CFSEU "is not aware of any evidence in our possession which would indicate that Clay ROUECHE is innocent of drug trafficking and/or money laundering offenses," Dkt. #229, Attach. B at 4. The government asserts that it has turned over to defendant all of the information it has received from Canadian authorities. Id. ¶ 7; Dkt. #229 at 2.

Defendant contends that the government has not made good faith efforts to produce Brady information to the defense. Dkt. #220 at 6. Although defendant does not express doubt that the government attorneys have turned over all of the information they possess pertaining to the Canadian investigation, he finds the Canadian authorities' claim that they do not possess any exculpatory evidence "simply unbelievable." Id. at 7. According to defendant, "[e]ither the Canadian authorities have no understanding of the principles that are embodied in *Brady* and its progeny, or these authorities have made no real effort to identify *Brady* information in their files." Id. Defendant's analysis may be correct. It is certainly striking that CFSEU provided no Brady material in response to the government's request. Although the government specified that exculpatory evidence includes "(1) evidence favorable to the accused which is 'material to guilt or punishment' as well as (2) evidence which could be used to impeach a government witness," Dkt. #229, Attach. A ¶ 4, CFSEU's response suggests it applied a much narrower test in searching only for evidence "which would indicate that [defendant] is innocent," Dkt. #229, Attach. B at 4.

However, defendant has called into question only the good faith of the Canadian authorities. He has not pointed to any action on the part of the government attorneys that would indicate they have not made a good faith effort to obtain the requested evidence. Instead, defendant relies solely on the "close relationship of these law enforcement agencies" to contend that "the prosecutors should not be heard to complain that they do not have access to the information that is being withheld by the Canadian authorities." Dkt. #178 at 7. But even if the

ORDER DENYING DEFENDANT'S
MOTION FOR DISCOVERY OF
EVIDENCE RE: JOINT
INVESTIGATION - 5

Court were to find that U.S. and Canadian officials participated in a joint investigation of defendant, there is no indication that the government attorneys have unfettered access to the Canadian investigation and can retrieve evidence at the snap of a finger. While the Court expects the government to do everything within its means to clarify its request and convey to Canadian officials the significance of the <u>Brady</u> principle to the U.S. justice system,[3] it cannot order the government to do any more than request the information from Canadian authorities.

### III. CONCLUSION

For all of the foregoing reasons, the Court DENIES defendant's motion for discovery of evidence (Dkt. #178).

DATED this 15th day of April, 2009.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

---

[3] In fact, Canadian law similarly recognizes the government's legal duty to disclose all relevant information in a criminal case. See <u>Regina v. Stinchcombe</u>, (1991), 68 C.C.C. (3d) 1, 12 (S.C.C.) ("[T]he fruits of the investigation which are in the possession of counsel for the Crown are not the property of the Crown for use in securing a conviction but the property of the public to be used to ensure that justice is done.").