Chief Judge Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>           v.<br><br>CLAY ROUECHE,<br><br>           Defendant. | NO. CR07-0344 RSL<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Susan M. Roe and Roger S. Rogoff, Assistant United States Attorneys for said District, files this Sentencing Memorandum. Sentencing is scheduled for Thursday, November 5, 2009.

## I. BACKGROUND

In this era, where federal law enforcement agents have focused intensely on stopping the international drug trade, the phrases "drug lord" and "international drug-trafficking organization" can be misused and overstated. But not in this case. Defendant Clay Roueche oversaw the movement of tens of thousands of pounds of marijuana, thousands of kilograms of cocaine, and millions of U.S. dollars through several states and at least three North American countries. He used private airplanes, float planes, helicopters, cars, semi-trucks and coded Blackberry telephones to create a secret and successful organization that he planned to extend into the Far East and South America. He employed pilots, drug couriers and money transporters to carry out the objectives of

GOVERNMENT'S SENTENCING MEMORANDUM
*U.S. v. Clay Roueche,* CR07-344RSL — Page 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

his organization. His organization was equal parts corporate and violent. Clay Roueche worked hard, with laudable organizational skills coupled with an attention to detail, to achieve the moniker "drug lord." Similarly, his organization deserves the descriptor of "international drug trafficking organization."

Three separate drug and money laundering investigations dovetailed in 2005 and 2006, and each led to Roueche's Canadian-based, multi-national, multi-ethnic drug trafficking organization known as the United Nations Gang (hereinafter "UN Gang"). Defendant Clay Roueche was the public face of this violent, quasi-corporate group, and led its drug trafficking endeavors. The group used guns, threats and violence to keep its contracted workers and gang members in line and to ensure that no one informed on the group's activities. The UN Gang is the type of organized, sophisticated drug trading group that presents a significant danger to the safety, peace and security of the United States.

Using customary investigative techniques, routine arrests and seizures, confidential informants, undercover agents, recorded phone calls, a consensual wire intercept, search warrants, physical surveillance, electronic surveillance and inter-agency cooperation as well as other sophisticated law enforcement techniques, a multitude of federal law enforcement agencies undertook to dismantle or disrupt the organization. Led by Immigration and Customs Enforcement, these agents arrested and charged key elements of the organization throughout 2005, 2006 and 2007. These arrests, and the information gathered from the arrestees, led directly to the UN Gang's center of operations in British Columbia, Canada. It also led directly and repeatedly to Clay Roueche.

On October 11, 2007, a grand jury in this district indicted Roueche, charging him with Conspiracy to Export Cocaine (Count I), Conspiracy to Distribute Cocaine (Count II), Conspiracy to Import Marijuana (Count III), Carrying a Firearm During a Drug Trafficking Crime (Count IV), and Conspiracy to Launder Monetary Instruments (Count V). Roueche remained in Canada, and a sealed warrant issued for his arrest.

GOVERNMENT'S SENTENCING MEMORANDUM
U.S. v. Clay Roueche, CR07-344RSL — Page 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   On May 19, 2008, Clay Roueche flew from Canada to Mexico, ostensibly to attend
2   the wedding of a UN Gang member. Mexican law enforcement learned that Roueche was
3   wanted in connection with drug trafficking crimes and rejected his application for entry
4   into their country. When Roueche's return flight to Canada landed in Houston, Texas on
5   a layover, he was arrested on the outstanding warrant and brought to this district.
6   On April 28, 2009, Roueche pleaded guilty to Conspiracy to Export Cocaine
7   (Count I), Conspiracy to Import Marijuana (Count III), and Conspiracy to Launder
8   Monetary Instruments (Count V) of the superseding indictment. The Court set sentencing
9   for November 5, 2009 at 1:30 p.m. In Roueche's plea agreement, which arose from a
10  settlement conference with Judge Ricardo S. Martinez, he admitted only to the elements
11  of the charged offenses. Thus, the Government will use this sentencing memorandum to
12  set out a comprehensive and complete overview of the evidence of Roueche's criminal
13  conduct. In order to do so effectively, the government has attached several fact-laden
14  exhibits, which are described below.
15  The Government makes an extraordinary sentencing recommendation of 30 years
16  in prison. The Government makes this recommendation fully aware of the sentences that
17  other drug traffickers have received in this district and, particularly, in this Court. The
18  government makes the recommendation thoughtfully, after honestly considering the
19  factors set forth in Title 18, United States Code, Section 3553. The government makes
20  the recommendation because Clay Roueche is an extraordinarily dangerous, remorseless
21  defendant, who committed extraordinarily serious crimes. He deserves this extraordinary
22  sentence.

## II. FACTS

24  In his plea agreement, Roueche admitted to conspiring with others to export more
25  than 5 kilograms of cocaine and more than 1,000 kilograms of marijuana. He also
26  admitted to arranging for the collection and transportation of marijuana proceeds in an
27  attempt to conceal or disguise the source of those funds. These legalistic descriptions fail
28  to paint a fair picture of Roueche's behavior.

GOVERNMENT'S SENTENCING MEMORANDUM
U.S. v. Clay Roueche, CR07-344RSL — Page 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In an effort to present both the incredible scope of Roueche's organization, as well as its detailed sophistication, the government has presented the Court with two separate visual representations of Roueche's conspiracy. First, the Court has a two-year graphic calendar with five columns depicting types of Roueche's illegal activity. See Exhibit 1, Overview of Roueche's Activities. Each column corresponds to a general type of event which occurred during the investigation. The colored lines denote a date which is explained in the corresponding Tab. This is intended to allow the Court to see the overall size of the conspiracy. The Court can read about each event, thereby understanding the depth and sophistication of Roueche's organization by referring to the appropriate Tab. See Exhibit 1, Overview of Roueche's Activities.

The facts that underlie these exhibits are drawn from a variety of sources. First, the majority of facts are found in investigative reports from ICE, the Drug Enforcement Administration (DEA), the U.S. Forest Service (USFS), and state and local law enforcement agencies. These reports document agents' actions, including surveillance of drug smuggling, money transports, vehicle movements, aircraft movements, meetings, business communication and travel records, sworn statements of others involved (See Exhibits 3, 5-9). They also recount the actions and recorded conversations between Roueche, his employees, and various confidential informants and undercover agents.

***HISTORY OF THE INVESTIGATION***

(1) In early 2005, law enforcement on both sides of the U.S.– Canadian border responded to a marked increase in helicopter smuggling. See, Exhibit 3, Affidavit of Peter Ostrovsky. Law enforcement agents documented traffic stops, seizures, flights, civilian reports, and movement and identification of people believed to be involved. The first line on the graph, entitled Activity on US–CDN Border (MJ), and Tab 1, both reflect the information from these law enforcement reports.

(2) Later in 2005, and arising from what agents initially believed was an unrelated investigation, the government learned more about Roueche's smuggling. This

GOVERNMENT'S SENTENCING MEMORANDUM
*U.S. v. Clay Roueche,* CR07-344RSL — Page 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information came from a dual Canadian–US citizen, Ken Davis, who knew and worked with Clay Roueche, Doug Vanalstine and other UN Gang members.

Following this investigative thread, beginning in April 2005, agents used Davis to learn the extent of Roueche's and the UN Gang's marijuana smuggling operations. Davis made recorded telephone calls with Roueche and, under ICE supervision, began "working" to help Roueche in his smuggling. For instance, Roueche said he wanted Davis to sell a truck with hidden compartments to two of his workers, Canadians Schouten and Fews, who were here in the U.S. They needed another truck for the marijuana loads. ICE obtained a truck, equipped with GPS tracker and a kill switch, which Davis sold to Schouten and Fews.

Davis also met with some of Roueche's workers and learned more, such as in a meeting Schouten and Fews, in which Schouten discussed how Roueche intended to set up operations in the Seattle area. Schouten explained that Roueche wanted a rental house for four people so that four different cars could, "bomb in and out with deliveries everyday."

After Schouten took possession of the truck, GPS tracked it directly to a helicopter landing site. Later, when loaded with marijuana, agents used the truck's kill switch to seize a load of 500 pounds of marijuana from Schouten. Tab 2 of the government's exhibit generally deals with marijuana loads, marijuana seizures and Roueche's and Davis' roles. The information is derived from the recorded telephone calls and ROIs.

(3) Tab 3 focuses on Roueche's own statements made during calls with Davis. The calls contain Roueche's directives to Davis, his thoughts and assessments of ongoing events, and his money laundering activities. More importantly they highlight the leadership role that Roueche possesses within the UN Gang. These entries were taken from the calls (usually recorded although occasionally the equipment failed) and ROIs.

(4) Tab 4 outlines the known flights taken by Dan Leclerc, a pilot who flew a small plane transporting cocaine from Los Angeles into Canada for Doug Vanalstine and

GOVERNMENT'S SENTENCING MEMORANDUM
U.S. v. Clay Roueche, CR07-344RSL — Page 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Clay Roueche, between July 2005 and September 2006. The dates are confirmed by business records and receipts.

(5) Tab 5 details the investigation, actions and seizures which took place in California as a result of the currency that undercover ICE agents carried to Calfornia for Roueche. ICE delivered money to three men, two of whom were identified. One is Khanh Truong whom Leclerc also identified by name, photograph and car as one of his cocaine suppliers. The other was Omar Amaro-Gallegos who remains a fugitive. Truong and Amaro-Gallegos also had a friend in common, Rafael Hernandez.

Some events are included in more than one Tab, when inclusion seemed important for continuity and context. For instance, the currency transports in January and March of 2006 are included in both Tab 3 and Tab 5.

In all, the investigation resulted in the seizure of 2,169 pounds of Canadian marijuana, 335 kilograms of cocaine, $2,033,388 in U.S. currency, two pounds of crack cocaine, four pounds of methamphetamine, and five firearms. In addition, agents conducted the undercover delivery of $748,460 in U.S. currency at the direction of Roueche and Russell. ICE agents also documented through motion-activated video surveillance systems, that approximately 3,500 additional pounds of marijuana were delivered during the investigation. None of these numbers attempts to extrapolate the seized contraband during a short period of time to the entire time-frame during which Roueche oversaw the operation. Attempts to do so produce staggering numbers.

***SOME ASPECTS OF THE CANADIAN INVESTIGATION UP THROUGH ROUECHE'S ARREST***

Another source of factual information before this Court derives from the investigation conducted in Canada by the Combined Forces Special Enforcement Unit (CFSEU). Beginning in 2007, and continuing through the searches immediately following Roueche's arrest in May, 2008, CFSEU provided this information to the government for use in his American trial. All of this information was timely provided to Roueche's lawyer.

GOVERNMENT'S SENTENCING MEMORANDUM
U.S. v. Clay Roueche, CR07-344RSL — Page 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The government submits this information to explain several aspects of Rouche's activities. When agents from CFSEU put together this electronic discovery mechanism, it was designed to merge audio recordings and summary information. The CFSEU agents arranged the information into "themes." The first theme shows evidence of Roueche's leadership role in the organization, as does a later section in which he attempts to obtain medical attention for an underling who was shot. The second and last themes help explain his successful, ongoing and, indeed, expanding drug dealing operations. His use of violence within the Gang is clear from two different themes. Finally, Roueche's long-running role in drug-trafficking, beginning when he lived with his father, is clear from Rupert Rouche's intercepted conversations.

### III. GUIDELINES CALCULATION

Roueche has no criminal history. His maximum term is life in prison. He has a mandatory minimum sentence of 10 years.

Roueche begins with a base offense level of 38 due to his exportation of more than 150 kilograms of cocaine. U.S.S.G. § 2D1.1(c)(3). The defendant most likely imported more than 30,000 kilograms of marijuana as well.

Roueche's base offense level should be increased by two levels because he possessed a firearm during the course of the conspiracy. U.S.S.G. § 2D1.1(b)(1). Roueche's base offense level should be increased by two levels because he used airplanes to import marijuana and export cocaine. U.S.S.G. § 2D1.1(b)(2)(A). Roueche's base offense level should be increased because of his Title 18, United States Code, Section 1956(h) conviction. U.S.S.G. § 2S1.1(b)(2)(B). Roueche deserves an increase in his base offense level by four levels because his role in the offense is aggravated, and he is the leader of an organization with more than five members. U.S.S.G. § 3B1.1(a). Thus, Roueche's base offense level is 48.

Upon receiving a reduction for Acceptance of Responsibility, Roueche's total offense level is 45. Probation concurs with this assessment of Roueche's offense level. His advisory guidelines range is life in prison.

GOVERNMENT'S SENTENCING MEMORANDUM
U.S. v. Clay Roueche, CR07-344RSL — Page 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# IV. RECOMMENDATION

The Government recommends a sentence of 30 years, or 360 months, in custody. The Court should follow the government's recommendation because it appropriately holds Roueche accountable for years of criminal behavior resulting in the construction of a multinational drug-trafficking organization. Roueche's sole motivation in every action he has undertaken over the past several years has been to make obscene amounts of money through the illegal distribution of drugs in and through the United States. His organization has used any means necessary to carry out this goal, including threats and violence.

Birgis Brooks, in his affidavit, described how a UN Gang associate accidentally fired a handgun at a party in April, 2003. He described how Roueche and others appreciated Brooks' ability to control the situation and avoid police involvement. Brooks described how Roueche and most other UN Gang members kept guns hidden in compartments within their cars. See Brooks affidavit, Exhibit # 6. Roueche described to Ken Davis that once, as a gang enforcer, he had beat another person with dull machetes. See Davis affidavit, Exhibit # 7.

Dan Leclerc described meeting Roueche, Vanalstine and Curtis Porter on Vanalstine's boat. During the meeting, Leclerc evinced a desire to stop flying loads of cocaine for the UN Gang. They told Leclerc that he did not have a choice, that he knew too much and they would, "have to kill [him] if [he] refuse[d]." Leclerc further described UN Gang drug business meetings, at which he felt scared and intimidated. He has seen Roueche with guns, and has been threatened directly by Roueche that he would be killed if he cooperated with law enforcement. See LeClerc affidavit, Exhibit # 8.

None of Roueche's post-arrest actions or writings evinces any desire to change his lifestyle or move in a different direction. He simply wishes to continue supporting his organization until he can get out and pick up where he left off. In a letter addressed to "Mrs. Roueche" but which begins, "To my Bro's [*sic*]," Roueche spends two handwritten pages re-dedicating himself to his gang. He muses about the "hella cool" cellmates he

GOVERNMENT'S SENTENCING MEMORANDUM
*U.S. v. Clay Roueche,* CR07-344RSL — Page 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

had in the Federal Detention Center, commenting that he closely listened to their stories because he has, "a big thirst for knowledge." The first person he described had, "crazy tatts and bullet wounds everywhere as well as stacks of charges LOL."

Roueche spoke reverentially of this inmate, as well as two others with criminal pasts, and describes that they all "seemed solid." He put himself on equal footing with these criminals, explaining, "it seems real men can usually tell what others are real."

Roueche also appears to hold those who refuse to talk to the authorities as more upstanding than those who do not. He described that the inmates in state prisons are more "solid" than those in the federal system because those in the state system must "show paperwork." He described his stay in a Texas jail as "interesting" and noted that he "met a cool crew there too."

Roueche simply shows no desire to walk away from the very people with whom he surrounded himself during his crimes. His behavior and his letters evince a continuing need to lead his "crew" and return to the drug trafficking he has lived for the past several years. He does not show a need or an inclination to change. When released, Roueche will undoubtedly go back to trafficking in narcotics, or whatever illegal goods make the most money for him.

In determining Roueche's sentence, the Court must analyze the following: (1) the nature and circumstances of the offense; (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the types of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Title 18, United States Code, Section 3553(a).

GOVERNMENT'S SENTENCING MEMORANDUM
U.S. v. Clay Roueche, CR07-344RSL — Page 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Roueche's behavior is difficult to describe simply with the word "serious." When determining Roueche's sentence, the Court should consider the creativity, toughness, and intelligence required to build and maintain an illegal organization the size of the UN Gang. Roueche has traveled the world to find new sources of supply and new potential markets for his drugs. He is worldly and charismatic. Unfortunately, he has chosen to use these traits in a manner that serves to hurt the people of the United States on as grand a scale as possible. The affidavits of the various cooperators paint the picture of a controlled, powerful man who appeared willing to take whatever necessary steps in order to continue his lucrative drug-trafficking business.

A sentence of 30 years serves to promote respect for the law, and provides just punishment. When judges sentence drug traffickers on a weekly basis in this district, they are invariably told, by both defense counsel and prosecutors, about the shadowy "main guy" who calls the shots for the organization and connects suppliers to the transporters to the distributors and beyond. Clay Roueche is that "main guy" for a very large organization. He is unlike nearly every other defendant that the Court sees, and he should receive a sentence that reflects his unique characteristics.

This Court recently sentenced Robert J. Shannon to 20 years in prison. The defendant may argue that Shannon and his crew operated at the same level as Roueche. However, a careful review of the depth and breadth of Roueche's operation shows that Roueche is on a completely different level. Whereas Shannon's operation was primarily limited to the west coast, Roueche was expanding his operation into New York, New Jersey and Chicago. Whereas Shannon did not evince any personal violence, Roueche has. Whereas Shannon apparently worked as the transportation boss for the Hells Angels gang, Roueche was the operational leader and face of the UN Gang. Essentially, given their respective positions within each gang, had Shannon worked for the UN Gang, he would have been Roueche's employee.

The government made a 405-month sentence recommendation for Shannon. The recommendation for Roueche, at 360 months, is less because the government now has a

GOVERNMENT'S SENTENCING MEMORANDUM
U.S. v. Clay Roueche, CR07-344RSL — Page 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 better idea of what this Court wishes to do with these large-scale drug trafficking
2 overseers. The government makes its 360-month recommendation understanding what
3 the Court did in Shannon, and with the hope that the Court finds its Roueche
4 recommendation reasonable, thoughtful and worth following.

5 Lawyers and judges often minimize the deterrent effect that criminal sentences
6 may have on others. However, in a case such as this, an organization with tentacles in so
7 many states and countries, and a leader who has made a significant amount of money
8 while living a luxurious lifestyle, it is imperative that the Court issue a sentence that
9 serves to dissuade others who wish to become the next Clay Roueche. The flip side of
10 deterrence is the court's ability to directly prevent Roueche himself from committing
11 additional crimes. Roueche's participation in the distribution of drugs in this country has
12 fueled the destruction of countless addicts, has destroyed countless relationships, and has
13 broken up countless families. The Court, quite simply, should prevent Roueche from
14 engaging in this behavior for as long as possible.

15 In looking at sentence disparity here, there are many drug distributors in this
16 district who receive sentences between 10 and 20 years. Some of these defendants are
17 nothing more than local or regional distributors. Should this defendant receive a sentence
18 anywhere near those numbers, it would minimize his actions. Given the sentence in
19 Shannon, and given Roueche's leadership role, the Court should follow the government's
20 recommendation.

21 Roueche is a unique drug dealer. He deserves a unique sentence among drug
22 dealers that this Court has sentenced. Given the guidelines range, 30 years is reasonable.
23 //
24 //
25 //

GOVERNMENT'S SENTENCING MEMORANDUM
*U.S. v. Clay Roueche,* CR07-344RSL — Page 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V. CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court follow the Government's recommendation and sentence Roueche to 30 years in prison.

DATED this 27th day of October, 2009.

        Respectfully submitted,

        JENNY A. DURKAN
        United States Attorney

        *s/ Susan M. Roe*
        SUSAN M. ROE
        Assistant United States Attorney
        WSBA #13000
        United States Attorney's Office
        700 Stewart, Suite 5220
        Seattle, Washington 98101-1271
        Telephone: (206) 553-1077
        Fax: (206) 553-4440
        E-mail: Susan.Roe@usdoj.gov

        *s/ Roger S. Rogoff*
        ROGER S. ROGOFF
        Assistant United States Attorney
        WSBA #23362
        United States Attorney's Office
        700 Stewart Street, Suite 5220
        Seattle, Washington 98101-1271
        Telephone: (206) 553-4330
        Fax: (206) 553-4440
        E-mail: Roger.Rogoff@usdoj.gov

GOVERNMENT'S SENTENCING MEMORANDUM
*U.S. v. Clay Roueche,* CR07-344RSL — Page 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2009 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s). I hereby certify that I have served the attorney(s) of record for the defendant(s) that are non CM/ECF participants via telefax.

*s/Lindsay Erickson*
LINDSAY ERICKSON
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-4377
Fax: (206) 553-4440
E-mail: Lindsay.Erickson@usdoj.gov

GOVERNMENT'S SENTENCING MEMORANDUM
*U.S. v. Clay Roueche,* CR07-344RSL — Page 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970