1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | NO. CR07-0344 RSL |
| v. | ) ) | GOVERNMENT'S SENTENCING MEMORANDUM |
| CLAY ROUECHE, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

# EXHIBIT 3:

# AFFIDAVIT OF PETER OSTROVSKY



## AFFIDAVIT

I, PETER OSTROVSKY, Affiant, Special Agent, U.S. Immigration and Customs Enforcement, being duly sworn under oath, state as follows:

### I. INTRODUCTION

1. I am a Special Agent of U.S. Immigration and Customs Enforcement (ICE), and have been so employed as a Special Agent Criminal Investigator with the United States Government since 1987. Currently, I am the Deputy Attaché assigned to the ICE office at the U. S. Embassy in London, England. I was an ICE Supervisor and Special Agent in Blaine, Washington for eleven years.

2. I was the Supervisory Special Agent in charge of ICE Operation Frozen Timber and the Clay Roueche investigation. I make this affidavit based upon my own personal knowledge and a review of ICE files and records to provide the Court with facts concerning the scope of Operation Frozen Timber and Roueche's criminality.

3. As a result of my investigative assignment in Blaine, Washington, I have become familiar with all aspects of cross border drug smuggling and money laundering involving Canadian drug trafficking organizations (DTO). Moreover, based upon my experience, I have learned that most prolific Canadian DTO are involved in the smuggling of Canadian marijuana into the United States in order to generate illicit proceeds which are subsequently used to purchase multi-kilogram quantities of cocaine in the United States for subsequent export and trafficking into Canada. This sort of criminality dramatically increases the United States' illicit drug supply by causing Mexican and Colombian DTO to smuggle more cocaine, which is subsequently trafficked in the United States and sold to Canadian DTO.

4. In the fall of 2004, the Royal Canadian Mounted Police (RCMP) Border Integrity Program relayed information to ICE that they heard that helicopters were being used for the smuggling of drug contraband across the United States – Canada border. The RCMP had no specific information about where the smuggling activity was occurring

along the border. Under my supervision, ICE commenced collecting information from other federal, state and local law enforcement agencies in the Western and Eastern Districts of Washington relating to reports of suspicious activities, persons and vehicles that had been observed in the North Cascades National Park, the Mt. Baker Snoqualmie National Forest and the Okanogan National Forest.

5. Based upon the information that ICE collected, I conceived Operation Frozen Timber as an ICE-led investigative operation with criminal investigative and homeland security purposes. The operation's purpose was as follows; to determine how ICE and its law enforcement partners could address the smuggling via helicopter threat in Washington State, to determine how pervasive smuggling via helicopter was at the border, to determine what were the homeland security threats, and to identify, disrupt and dismantle drug trafficking organizations (DTO) that were involved in such activity. By conducting such an investigative operation, ICE would also be able to ultimately prevent others from using smuggling via helicopter as a means to conduct National Security-related offenses.

6. During January 2005, ICE agents began extensive follow-up investigation to positively identify the persons, aircraft and locations that were being used during suspected smuggling via helicopter activities. Ultimately ICE investigation determined that the majority of the persons that were involved in smuggling via helicopter activities were working under the direction of Roueche and his subordinates in the UN GANG.

7. During April, 2005, ICE conducted a surveillance of suspected Canadian drug smugglers Gregory Fielding, Brian Fews and Trevor Schouten who were associated to Roueche, in the area of the Ross Lake National Recreation Area. In late April 2005, the National Park Service (NPS) investigated an incident where a civilian reported that a helicopter dropped two stacks of duffel bags now believed to have contained approximately 500 pounds of marijuana into a trailhead parking lot to Fews. Further NPS investigation resulted in the discovery of a Washington State Patrol traffic citation issued

to Schouten earlier on the same date, that was found discarded in the trailhead parking lot. This suspected marijuana load was not seized by the U.S. Government.

8. During May 2005, ICE and US Forest Service agents identified a suspected helicopter landing site in the Okanogan National Forest and installed a motion-activated video surveillance system. Between May 12-19, 2005, ICE agents gathered video evidence of a helicopter with Canadian registration number CGZAR dropping multiple duffel bags now believed to have contained approximately 1,500 pounds of marijuana to Fews, Schouten, Ryan Calvert and Craig Cameron. These suspected marijuana loads were not seized by the U.S. Government.

9. Prior to this surveillance activity, ICE developed an informant, now identified as Ken Davis, who admitted to previously participating in the offload of marijuana from helicopters in the Western and Eastern Districts of Washington under the direction of Roueche. The informant further advised that Roueche had solicited him to become involved in a variety of drug smuggling and drug trafficking activities in the United States on Roueche's behalf. Roueche also solicited the informant to sell a vehicle to a helicopter offloader identified as "Hollywood" who was already working in the United States on Roueche's behalf.

10. On May 26, 2005, ICE agents gathered partial video evidence of helicopter CGZAR landing in the Okanogan National Forest, but no vehicles or persons were filmed. Later on that same date and while under ICE supervision, the informant met with Schouten and Fews and sold them a pickup truck which had been outfitted with a GPS tracking device and an ignition kill-switch. Schouten stated that two other persons that were working with him had a marijuana load stolen from them in Seattle, Washington. ICE agents later determined that on May 5, 2005, Fews and Cameron reported a carjacking to the Seattle Police Department.

11. On May 31, 2005, ICE agents gathered video evidence of helicopter CGZAR in the Okanogan National Forest dropping multiple duffel bags now believed to

1 have contained approximately 500 pounds of marijuana to Schouten. This suspected
2 marijuana load was not seized by the U.S. Government.
3     12. On June 1, 2005, ICE agents gathered video evidence of helicopter CGZAR
4 in the Okanogan National Forest dropping multiple duffel bags now believed to have
5 contained approximately 1,500 pounds of marijuana to Schouten. This suspected
6 marijuana load was not seized by the U.S. Government.
7     13. On June 14, 2005, while under ICE supervision and audio surveillance, the
8 informant met with Schouten and Fews in Seattle, Washington. Schouten stated that he
9 was participating in smuggling activities on behalf of Roueche and Douglas Vanalstine, a
10 known criminal associate of Roueche and member of the UN GANG.
11     14. On June 16, 2005, ICE and U.S. Customs and Border Protection (CBP)
12 agents observed a different Canadian-registered helicopter drop 499 pounds of marijuana
13 to Schouten in a portion of the Okanogan National Forest that is in the Western District of
14 Washington. ICE agents activated the kill-switch near Arlington, Washington and
15 observed Schouten and Fews abandon the pickup truck. Roueche subsequently contacted
16 the informant and requested that the informant assist Schouten in recovering the vehicle
17 and marijuana load from the Washington State Patrol (WSP).
18     15. On August 12, 2005, ICE agents seized 525 pounds of marijuana from
19 Alexander Swanson that were offloaded from a Canadian-registered helicopter in the
20 Okanogan National Forest. Birgis Brooks was observing assisting Swanson during that
21 incident. Swanson subsequently identified Daniel Russell and Wes Goertzen, as
22 associates of Roueche and the persons who instructed him to work with Brooks. In
23 addition, Swanson admitted that one of the Canadian-registered helicopters had smuggled
24 him into the United States in order to evade CBP inspection at the border.
25     16. During September, 2005, Roueche solicited the informant, Davis, to sell a
26 vehicle to Brooks. Subsequently on September 21, 2005, ICE agents arrested Zachary
27 and Braydon Miraback after they offloaded 1,100 pounds of marijuana in the Okanogan
28 National Forest from a Canadian-registered helicopter and transported it to Brooks'

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

residence in Puyallup, Washington. Unfortunately on that same date, a RCMP member who was requested to identify the pilot of the helicopter, inadvertently advised the pilot Henry Rosenau that the U.S. Government was aware of his smuggling activities along with the locations from where Rosenau was operating the helicopters from in British Columbia, Canada.

17. Zachary Miraback subsequently admitted that he was also smuggled into the United States by one of the Canadian-registered helicopters in order to evade CBP inspection at the border.

18. During subsequent recorded telephone conversations with the informant regarding the sale of the vehicle to Brooks, Roueche surmised that Brooks had likely been involved in a situation similar to what had happened to Schouten and Fews when their vehicle broke down and their marijuana was seized.

19. In the fall, 2005, ICE agents determined through the use of their motion-activated video surveillance systems that all smuggling via helicopter activity at locations previously known to them had ceased. During subsequent recorded telephone conversations with the informant, Roueche stated that they "were undergoing some restructuring" and were using another method of aviation smuggling at a location "farther in" from the border which was much "flatter."

20. On December 1, 2005, ICE agents seized 321 pounds of marijuana from Fielding that was offloaded from a Canadian-registered floatplane at Soap Lake south of Omak, Washington. Fielding was a known associate of Schouten and Fews.

21. During December, 2005, during telephone conversations with the informant, Roueche solicited the informant to transport the illicit proceeds from narcotics sales in Seattle, Washington to Los Angeles, California in a vehicle with a hidden compartment. During the conversations, Roueche stated that the transportation of the proceeds to California would enable him "to get what I need." Roueche's statement was a reference to cocaine for the purposing of exporting it to Canada.

1   22.     Based upon Roueche's request, I requested that undercover ICE agents
2   familiar with the conduct of illicit currency pickup and delivery operations conduct this
3   undercover investigative activity on behalf of Operation Frozen Timber.
4   23.     Between January and March 2006, on multiple ocassions, Roueche and his
5   subordinate Daniel Russell, directed the informant to have undercover ICE agents pick
6   up, transport and deliver a total of $748,460 to persons in the Los Angeles area. ICE
7   agents identified Khoa Quoc Tran, Dung Nguyen, Henry Tran, Liem Thanh Huyn and
8   Kevin Vu Le as persons associated to Roueche and Russell in the Seattle, Washington
9   area that provided the illicit proceeds to undercover ICE agents which were transported to
10  the Los Angeles area.
11  24.     Meanwhile during February, 2006, Michael Brady, an associate of Brooks,
12  was arrested after offloading 85 pounds of marijuana from a Canadian-registered
13  floatplane in Colville, Washington. Brady subsequently admitted to also being involved
14  in the smuggling of cocaine to Canada via floatplane.
15  25.     While conducting currency deliveries in Los Angeles on behalf of Roueche,
16  ICE agents and local police investigators identified Khanh Anh Truong aka Pitbull, Omar
17  Gallegos Amaro and Noe Camacho as the recipients of the illicit proceeds. Subsequently
18  ICE and local police investigations in the Los Angeles area identified a network of
19  Mexican DTO operatives who were supplying Roueche with multi-hundred kilogram
20  quantities of cocaine for export to Canada.
21  26.     During 2006, follow up investigation by ICE agents and local police
22  investigators and the conduct of multiple search warrants resulted in the seizure of over
23  $2,000,000 in U.S. currency and approximately 200 kilograms of cocaine in the Los
24  Angeles area.
25  27.     During September, 2006, a Canadian airplane pilot, Danial Leclerc caught
26  the attention of CBP officers in Montana when he was clearing customs and declaring a
27  trip to Las Vegas, Nevada. CBP radar then tracked the airplane to California instead.
28  ICE agents subsequently observed Leclerc loading cardboard boxes into the airplane and

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

he departed northbound. Leclerc stopped in northern California, and admitted to agents that he was proceeding directly to Canada. ICE agents subsequently searched the airplane, seized 144 kilograms of cocaine and arrested Leclerc. During subsequent debriefs, Leclerc admitted that commencing in July 2005, he had conducted at least 12 such cocaine smuggling trips on behalf of Roueche, Vanalstine and Russell. Furthermore Leclerc admitted receiving some of the cocaine loads from Khanh Anh Truong aka Pitbull during the same period of time that undercover ICE agents were delivering currency to Truong.

28. During November 2007, ICE agents interviewed Brooks while he was in federal custody. Brooks indicated that he became associated with the UN GANG while living in Vancouver, Canada during 2003. Brooks further admitted conducting helicopter offload activities on behalf of Roueche, Vanalstine and Russell during 2005. Brooks also admitted to being a part of the UN GANG group photograph that was taken at a members funeral in British Columbia, Canada.

29. Brooks subsequently admitted that, in addition to all of his marijuana and money smuggling activity, he also procured a gun that was transported to Roueche in Canada. Specifically, Brooks said that he bought a Glock 9 mm pistol from a man who lived in Tacoma, Washington. He gave the gun to another man, who helped smuggle it into Canada. Brooks told law enforcement agents that Roueche and most other UN Gang members had guns hidden in stash boxes (hidden compartments) in their cars. This particular 9 mm Glock was found in Roueche's apartment when Canadian law enforcement searched it.

30. As a result of Operation Frozen Timber, ICE agents identified at least 15 helicopter landing sites on federal and state lands in Washington State that were being used by the UN GANG for drug and human smuggling activities. ICE agents further determined that the smuggling via helicopter threat was as follows; there were multiple Canadian-registered helicopters operating from Canada away from traditional airports in rural locations, the helicopters were being loaded with drug contraband in uninhabited,

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

| | |
|---|---|
| 1 | forested mountainous terrain near the border, the helicopters were evading civil aviation |
| 2 | radar detection and authorities by flying through cross border mountainous terrain where |
| 3 | there is no radar coverage, the helicopter were flying eight to 40 miles south of the |
| 4 | border and exploiting uninhabited federal and state lands where they could offload their |
| 5 | drug contraband in 43 seconds to 3 minutes and then return to Canada. Based upon the |
| 6 | aforementioned technical data alone, this sort of smuggling activity poses a significant |
| 7 | threat to U.S. border and homeland security. |
| 8 |     31.    Also as a result of Operation Frozen Timber and its focus on Roueche and |
| 9 | the activities of the UN GANG in multiple judicial districts in the Western United States, |
| 10 | ICE agents and their law enforcement partners were able to seize approximately 2,169 |
| 11 | pounds of Canadian marijuana, 335 kilograms of cocaine, $2,033,388 in U.S. currency, |
| 12 | two pounds of crack cocaine, four pounds of methamphetamine, five firearms and |
| 13 | conduct the undercover delivery of $748,460 in U.S. currency at the direction of Roueche |
| 14 | and Russell. ICE agents also documented through motion-activated video surveillance |
| 15 | systems, that approximately 3,500 pounds of Canadian marijuana was smuggled into the |
| 16 | United States by Roueche and the UN GANG which was not seized by the U.S. |
| 17 | // |
| 18 | // |
| 19 | // |

Government. Based upon the aforementioned seizures, information and proffers provided by convicted UN GANG members and criminal associates, Birgis Brooks, Alexander Swanson, Danial Leclerc and the Miraback brothers along with evidence gathered by ICE agents, it is estimated that Roueche and the UN GANG were responsible for importing at least 2,000 pounds of Canadian marijuana into Washington State from British Columbia, Canada and exporting at least 200 pounds of cocaine from California into British Columbia, Canada, per month.

PETER OSTROVSKY
Special Agent,
Immigration and Customs Enforcement

SUBSCRIBED and SWORN to before me this 23rd day of ~~November~~ October 2009.

Notary Public in and for the
_____, residing
at _____

JOANNA C. MELVILLE
PROFESSIONAL ADJUDICATION SPECIALIST
CONSULAR NOTARY OFFICER
UNITED STATES OF AMERICA
LONDON, ENGLAND
COMMISSION INDEFINITE