UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CLAYTON ROUECHE,<br><br>Defendant. | Case No. CR07-344RSL<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. # 416) and the amended motion submitted by appointed counsel (Dkt. # 425). Having considered the motion and the record contained herein,[1] the Court finds as follows:

### I. BACKGROUND

Defendant is a 46-year-old inmate currently incarcerated at Federal Correctional Institution Edgefield ("FCI Edgefield"). Dkts. # 425 at 1 n.1, # 428 at 4. On April 28, 2009, defendant pled guilty to three offenses: conspiracy to export cocaine, in violation of 21 U.S.C. §§ 953, 960(a)(1)(b)(1)(B) and 846; conspiracy to import marijuana, in violation of 21 U.S.C. §§ 953, 960(a)(1)(b)(1)(G) and 963; and conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h). Dkt. # 257. On December 16, 2009, the Court sentenced defendant to a

---

[1] The Court finds compelling reasons justify sealing both (1) Shirley Roueche's declaration as it contains medical records and other private information (Dkt. # 427) and (2) defendant's medical records (Dkt. # 430). The parties' respective motions to seal (Dkts. # 426, # 429) are accordingly GRANTED.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 1

360-month prison term and four years of supervised release. Dkt. # 353. On January 10, 2019, defendant filed a motion seeking a reduction in his sentence based on amendments to the United States Sentencing Guidelines. On April 23, 2019, the Court granted defendant's motion and reduced defendant's sentence to 288 months, a sentence in the middle of the new Guidelines range. Dkt. # 414. Defendant is currently scheduled for release from the custody of the Federal Bureau of Prisons ("BOP") on November 24, 2028. Dkts. # 425 at 1, # 428 at 4. He now moves for compassionate release.

## II. LEGAL FRAMEWORK

The compassionate release statute provides narrow grounds for defendants in "extraordinary and compelling" circumstances to be released from prison early. See 18 U.S.C. § 3582(c). The First Step Act of 2018 amended the procedural requirements governing compassionate release. See id. Prior to the First Step Act's passage, only the Director of the BOP could bring motions for compassionate release. The Director rarely filed such motions. See, e.g., United States v. Brown, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). Congress amended the statute to allow defendants to directly petition district courts for compassionate release. As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part,

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> > (i) extraordinary and compelling reasons warrant such a reduction; . . .
> >
> > (ii) . . .
>
> and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

Prior to passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. See 28 U.S.C. § 994(t). Section 994(t) provides,

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. § 3582(c)(1)(A)], shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.
>
> **Commentary**
>
> **Application Notes:**
>
> 1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2),

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 3

extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) **Medical Condition of the Defendant**—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an

> extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).
>
> 2. **Foreseeability of Extraordinary and Compelling Reasons.**—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.
>
> 3. **Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.
>
> 4. **Motion by the Director of the Bureau of Prisons.**—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.
>
> This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law[.]

U.S.S.G. § 1B1.13. The Ninth Circuit has held that U.S.S.G. § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." United States v. Aruda, 993 F.3d 797, 798 (9th Cir. 2021). The Court may consider U.S.S.G. § 1B1.13 in exercising its discretion, but the policy statement is not binding. Id.; see United States v. Van Cleave, Nos. CR03-247-RSL, CR04-125-RSL, 2020 WL 2800769, at *3–5 (W.D. Wash. May 29, 2020) (referring to the guidance of U.S.S.G. § 1B1.13 as "persuasive, but not binding").

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 5

### III. DEFENDANT'S CIRCUMSTANCES

#### a. Exhaustion Requirement

Prior to considering the merits of defendant's motion, the Court must determine whether he has met the statutory exhaustion requirement for compassionate release. See 18 U.S.C. § 3582(c)(1)(A). The Ninth Circuit recently held that "§ 3582(c)(1)(A)'s administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked." United States v. Keller, Nos. 20-50247, 21-50035, 2021 WL 2695129, at *3 (9th Cir. July 1, 2021). The government contends that defendant has not satisfied this requirement because he has not submitted a new request to the Warden addressing his current basis for relief. Dkt. # 428 at 8–9. The government relies upon the Seventh Circuit's decision in United States v. Williams, 987 F.3d 700, 703 (7th Cir. 2021), which held that "an inmate is required to present the same or similar ground for compassionate release in a request to the [BOP] as in a motion to the court." Defendant asserts that several district courts have rejected the "issue exhaustion" approach that Williams adopted,[2] and defendant relies primarily on United States v. Ferguson, No. 10-20403, 2021 WL 1685944, at *2 (D. Mich., Apr. 29, 2021).

The Ferguson court cites Sims v. Apfel, 530 U.S. 103, 108–112 (2000), which cautioned courts against imposing issue-exhaustion requirements in administrative appeals where the statutory text does not otherwise require issue exhaustion and where the administrative proceeding is not adversarial. The Supreme Court held that the Social Security proceedings at issue in Sims fell very clearly on the nonadversarial side of the spectrum as compared to court

---

[2] As far as the Court is aware, Williams is currently the only circuit court decision explicitly addressing issue exhaustion in the compassionate release context. That said, the Ninth Circuit's Keller decision suggests that when a compassionate release motion is premised on circumstances different from those alleged in an inmate's request to the Warden, that such a request cannot be used to establish exhaustion. Keller, 2021 WL 2695129, at *4 ("First, Keller asserts that he fully exhausted his administrative remedies for his second motion because 30 days had passed since he lodged his first administrative request with the warden in July 2020. But the July 2020 request served as the predicate for Keller's first motion in the district court, which was denied in September 2020, and could not have initiated the administrative process for his January 2021 motion, which was itself premised on Keller's claim of changed circumstances.")

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 6

proceedings and that a judicially created issue-exhaustion requirement would therefore be inappropriate. Apfel, 530 U.S. at 110–12. The Ferguson court cited United States v. Brown, 457 F. Supp. 3d 691, 697 (S.D. Iowa 2020), for its conclusion that compassionate release requests are not adversarial proceedings. The Brown court reasoned that "there are no proceedings," the "warden marshals the facts and weighs each side," and the "prosecutors and the prisoner do not have representatives or make arguments." Brown, 457 F. Supp. 3d at 697.

Compassionate release requests are distinguishable from the Social Security proceedings analyzed in Sims. In Social Security proceedings, the Administrative Law Judge has a duty to "investigate the facts and develop the arguments both for and against granting benefits." Sims, 530 U.S. at 111. Compassionate release requests, however, involve BOP decisionmakers relying upon the inmate to offer information regarding the "extraordinary or compelling circumstances that the inmate believes warrant consideration." 28 C.F.R. § 571.61(a)(1); see also BOP Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited June 30, 2021) (explaining what information an inmate should provide for requests based on different grounds and that the Warden may deny a request "if the Warden finds that the inmate has not provided adequate information and documentation"). BOP wardens investigate the merits of a request, see 28 C.F.R. § 571.62(a)(1), but federal regulations provide that during the course of internal BOP appeals, requesters "may not raise . . . issues not raised in the lower level filings." 28 C.F.R. § 542.15(b)(2); see also 28 C.F.R. § 571.63 (requiring appeals of compassionate release denials to comply with 28 C.F.R. § 542.15). The purpose of § 3562(c)(1)(A)'s exhaustion requirement is to "provide the [BOP] with the information necessary to move for release on a defendant's behalf." Williams, 987 F.3d at 703; see also Keller, 2021 WL 2695129, at *4 (commenting that "such procedural rules allow the executive branch to carefully evaluate a claim in the first instance and possibly obviate the need for litigation *before* it begins"). This Court agrees with the Seventh Circuit that it would be contrary to the purpose of the exhaustion requirement to permit any request to the Warden to satisfy a defendant's exhaustion obligations. Id.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 7

Defendant's compassionate release request to the Warden on February 23, 2021 pointed to the COVID-19 pandemic, Dkt. # 425-2 at 3, not to the family circumstances defendant puts before the Court. See Dkt. # 425 at 1 (referring to defendant's interest in caring for his elderly mother). Because the current grounds are not at all similar to the grounds defendant articulated to the BOP in his request to the Warden, the Court finds that defendant has not exhausted. Even assuming, *arguendo*, that the dissimilar circumstances defendant offered in his initial request to the Warden and in his current motion before the Court are not a barrier to proper exhaustion, the Court nevertheless determines that defendant's motion for compassionate release must be denied for other reasons.

### b. "Extraordinary and Compelling" Circumstances

Defendant's motion for compassionate release is based primarily on the need to care for his mother and evidence of his post-sentence rehabilitation.[3] Dkt. # 425 at 9–11. The Court addresses each of these rationales in turn.

Although the U.S.S.G. § 1B1.13 policy statement is not binding, the Court finds it instructive regarding the type of family circumstances that would constitute extraordinary and compelling circumstances: "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children[;] (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C). The policy statement does not include family circumstances related to caring for ailing parents, though some courts have considered a defendant's need to care for family members beyond those referenced in the policy statement as

---

[3] Defendant's motion also mentions that his "children have been left without a guardian or adult support." Dkt. # 425 at 9. Defendant's mother and father were appointed as legal guardians for two of defendant's children in 2010. Dkt. # 427 ¶ 7. Defendants children are now adults. Dkt. # 427 ¶ 8. As recently as the writing of defendant's mother's declaration, defendant's youngest daughter was living with his mother, which suggests that his mother has offered support to his daughters as adults. Id. The fact that defendants' children have not had the in-person support of their incarcerated father is unfortunately an all too common occurrence that does not rise to extraordinary and compelling circumstances.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 8

a basis for compassionate release. See e.g., United States v. Yoda, No. 15-cr-95 (AJN), 2020 WL 5502325, at *2 (S.D.N.Y. Sept. 11, 2020). Even if the Court were to consider care for a parent as a potential basis for compassionate release, the Court finds that incapacitation of the family member and the unavailability of other caregivers remain critical to the analysis because it ensures that the circumstances are truly extraordinary and compelling. As the government points out, the "fact that an inmate has an elderly parent who could well benefit from the assistance from an incarcerated son or daughter would not constitute an extraordinary event" because "[o]therwise, this would apply to any inmate with a parent [who] is both elderly and has health conditions." Dkt. # 428 at 7–8. Here, defendant has presented insufficient evidence that his mother, Mrs. Roueche, is incapacitated and that he is the only available caregiver.

Defendant relies on cases like United States v. Bucci, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) and United States v. Hernandez, No. 16-20091-CR, 2020 WL 4343991, at *1 (S.D. Fla. Apr. 3, 2020), but these cases are distinguishable. The incapacitation of the mothers of the defendants in Bucci and Hernandez was more clear. Mr. Bucci's mother needed 24-hour care because she had suffered a debilitating cerebral stroke and was unable to stand without 2-person assistance and an assistive device. Bucci, 409 F. Supp. 3d 1, at Dkts. # 656, # 656-1. Mr. Hernandez's mother was functionally blind, was in remission from a recent bout of cancer, and she suffered from severe atherosclerosis and had mobility limitations. Hernandez, 2020 WL 4343991, at *1. While the Court is sympathetic to Mrs. Roueche's recent loss of her husband, and the physical challenges that she is currently facing, her declaration does not establish that she is incapacitated. Mrs. Roueche describes her heart condition and explains that she has limited energy. Dkt. # 427 ¶ 9. Mrs. Roueche also describes other issues that she is regulating with medication. Dkt. # 427 ¶ 10. Additionally, Mrs. Roueche explains that she is concerned that she will not be able to walk without some form of assistance "before too long," but she is apparently able to walk without assistance at present, though her arthritis makes it "hard for [her] to stand or walk." Dkt. # 427 ¶ 11. Moreover, while Mrs. Roueche has difficulty seeing due to cataracts, she is able to drive short distances, provided that it is not in the evening or in bad lighting. Dkt. # 427 ¶¶ 12, 14. Undoubtedly, assistance from family members or others

would be extremely beneficial to Mrs. Roueche, but she does not appear to be currently incapacitated by her health conditions.

Additionally, defendant has not demonstrated that he is the only available caregiver. Mrs. Roueche expresses that "none of [her] family members are willing or able to help." Dkt. # 427 ¶ 15. Notably, Mrs. Roueche was appointed as a legal guardian of two of defendant's daughters, who are ages 21 and 18 respectively. Dkt. # 427 ¶ 8. At the time Mrs. Roueche wrote her declaration, defendant's younger daughter, Chanel, was living with Mrs. Roueche and was working in Abbotsford, British Columbia.[4] Dkt. # 427 ¶ 8. Although Mrs. Roueche reported that Chanel would be moving out of her home in a few months so that she could live closer to her work, Abbotsford is only around a half-hour drive or thirty-five minute bus ride from the city where Mrs. Roueche resides. See Googlemaps, https:/maps.google.com (last visited June 30, 2021) (mapping Abbotsford to Chilliwack). Mrs. Roueche asserts that Chanel is incapable of helping her "due to her personal challenges," namely, severe anxiety, being fearful of driving, and other mental health issues. Dkt. # 427 ¶ 8. Chanel may be facing personal challenges, but they do not appear to prevent her from maintaining employment, and it is unclear why she would be totally unable to assist Mrs. Roueche. Additionally, defendant's daughter, Chaylin, is attending school in Kelowna, British Columbia, with the hope of obtaining a degree in nursing. Admittedly, Kelowna is far from Mrs. Roueche's current city of residence, around three hours away. See Googlemaps, https:/maps.google.com (last visited June 30, 2021) (mapping Chilliwack to Kelowna). Nevertheless, it is unclear why relocation is not an option for Mrs. Roueche. The Court agrees with the government that the "record here does not establish that [Mrs. Roueche's] situation is so dire as to rise to the level of an extraordinary and compelling circumstance that would support a reduction in Roueche's sentence." Dkt. # 428 at 10.

---

[4] Defendant's oldest daughter, Claudia, is not mentioned in Mrs. Roueche's declaration. And defendant has not explained why Claudia would be unable to assist Mrs. Roueche. As of 2019, Claudia had informed the Court that she was living in Abbotsford, where she was enrolled at university. Dkt. # 407 at 29.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 10

Turning to defendant's evidence of post-sentence rehabilitation, the government does not contest defendant's assertions that he has had no disciplinary actions for nearly a decade or that he is classified as a "minimal risk of recidivism." Dkt. # 425 at 11; see Dkt. # 428 at 10 (not disputing the factual basis of defendant's rehabilitation argument). Additionally, defendant offered records of education courses he has completed during his incarceration, and the Court commends defendant on his engagement in extensive educational programming. Dkt. # 425-1 at 2–3 (reflecting more than 70 education courses). However, "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t) (emphasis added). As explained above, defendant's family circumstances do not rise to the extraordinary and compelling level. The Court finds that defendant's record of rehabilitation is insufficient to render his circumstances extraordinary and compelling, even when considered in combination with his family circumstances, where defendant has failed to adequately establish both the incapacitation of his mother and the unavailability of other caregivers. Having determined that defendant has not made the requisite showing of extraordinary and compelling reasons for compassionate release, the Court need not analyze whether a reduction in defendant's sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a).

### IV. CONCLUSION

For all the foregoing reasons, defendant's motion for compassionate release (Dkts. # 416, #425) is DENIED. The parties' respective motions to seal (Dkts. # 426, # 429) are GRANTED.

IT IS SO ORDERED.

DATED this 2nd day of July, 2021.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge