UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CLAYTON ROUECHE,<br><br>Defendant. | Case No. CR07-344RSL<br><br>ORDER DENYING DEFENDANT'S THIRD MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. # 450. Having considered the motion, Probation's memorandum (Dkt. # 451), the Government's response (Dkt. # 453), and the record contained herein, the Court DENIES the motion and finds as follows:

**I.     Background**

Defendant is a 49-year-old inmate currently incarcerated at Federal Correctional Institution Oxford ("FCI Oxford"). Dkt. # 454; *See Inmate Locator*, www.bop.gov/inmateloc (accessed Oct. 30, 2024). On April 28, 2009, defendant pled guilty to three offenses: conspiracy to export cocaine in violation of 21 U.S.C. §§ 953, 960(a)(1), (b)(1)(B), and 846; conspiracy to

ORDER DENYING DEFENDANT'S THIRD
MOTION FOR COMPASSIONATE RELEASE - 1

import marijuana in violation of 21 U.S.C. §§ 953, 960(a)(1), (b)(1)(G), and 963; and conspiracy to engage in money laundering in violation of 18 U.S.C. § 1956(h). Dkt. # 257.

On December 16, 2009, the Court sentenced defendant to a 360-month prison term and five years of supervised release. Dkt. # 353. On January 10, 2019, defendant filed a motion seeking a reduction in his sentence based on amendments to the United States Sentencing Guidelines. Dkt. # 407. On April 23, 2019, the Court granted defendant's motion and reduced defendant's sentence to 288 months, a sentence in the middle of the new Guidelines range. Dkt. # 414. Defendant is currently scheduled for release from the custody of the Federal Bureau of Prisons ("BOP") on November 25, 2027. *See Inmate Locator*, www.bop.gov/inmateloc (accessed Oct. 30, 2024).

This is defendant's third motion for compassionate release. Defendant's first motion sought release primarily on the basis that he needed to care for his mother and evidence of his post-sentence rehabilitation. Dkt. # 425. The Court denied defendant's first motion for compassionate release on July 2, 2021. Dkt. # 432. Defendant's second motion sought release primarily because a change to the federal Controlled Substance Act had removed hemp from the definition of marijuana. Dkt. # 443. Defendant argued that because some amount of the marijuana he pled guilty to conspiring to import was actually hemp, he had been "punished with a much longer sentence" than he would have received had he been sentenced after the change to the Act. *Id*. The Court denied defendant's second motion for compassionate release on November 4, 2022, finding that even if all the marijuana defendant pled guilty to importing was categorized as "hemp," defendant's sentencing range would be unchanged. *Id*.

ORDER DENYING DEFENDANT'S THIRD
MOTION FOR COMPASSIONATE RELEASE - 2

## II.  Legal Framework

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Congress has provided an exception to that rule, known as compassionate release, which allows the Court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c); *see also United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021); *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021). The First Step Act of 2018 amended the procedural requirements governing compassionate release. Prior to the First Step Act's passage, only the Director of the BOP could bring motions for compassionate release. Now, under the First Step Act, defendants are permitted to directly petition the Court for compassionate release. As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
>  (1) in any case—
>
>   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>    (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
>    (ii) . . .

ORDER DENYING DEFENDANT'S THIRD
MOTION FOR COMPASSIONATE RELEASE - 3

and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

Before passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. *See* 28 U.S.C. § 994(t). In doing so, Congress instructed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* The Sentencing Commission implemented this directive from Congress with a policy statement, U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> **(a) In General.**—Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—
>
>> (1)(A) Extraordinary and compelling reasons warrant the reduction;
>> . . .
>> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>> (3) The reduction is consistent with this policy statement.
>
> **(b) Extraordinary and Compelling Reasons.**—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof . . .
>
>> (3)(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent . . .
>> (6) If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether

ORDER DENYING DEFENDANT'S THIRD
MOTION FOR COMPASSIONATE RELEASE - 4

> the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances . . .
>
> **(d) Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13.

The Ninth Circuit has held that U.S.S.G. § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *Aruda*, 993 F.3d at 798, 802. The Court may consider U.S.S.G. § 1B1.13 in exercising its discretion, but it is not binding. *Id.*

### III. Defendant's Characteristics

In deciding whether to grant defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1), the Court considers: (A) whether defendant has met the statutory exhaustion requirement for compassionate release, (B) whether "extraordinary and compelling reasons warrant such a reduction," and (C) the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. *See Keller*, 2 F.4th at 1283-84 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

### A. Exhaustion Requirement

The Court first determines whether defendant has met the statutory exhaustion requirement. Where, as here, the Director of the BOP has not filed the motion on defendant's behalf, the Court may only consider the motion if defendant has requested that the BOP make such a motion and either (i) defendant has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (ii) 30 days have elapsed since the "warden of the defendant's facility" received a compassionate-release request from defendant. *Keller*, 2 F.4th at 1281 (quoting 18 U.S.C. § 3582(c)(1)(A)). Defendant asserts that he satisfied the exhaustion requirement by submitting a compassionate release request to the warden at FCI Oxford that was denied on May 24, 2024. Dkt. # 450 at 4, Ex. 1. The government has not challenged defendant's assertion in its briefing, nor has it raised statutory exhaustion as an issue here. Dkt. # 453. Defendant filed his current motion for compassionate release with this Court on August 6, 2024. Dkt. # 450. Because more than 30 days elapsed between defendant's request to the warden at FCI Oxford and defendant's filing with this Court, the motion is properly before this Court. Dkt. #450, Ex. 1. *See United States v. Ibarra*, No. CR16-0287JLR, 2023 WL 3304219, at 2 (W.D. Wash. May 8, 2023) (finding, in similar circumstances, that defendant's motion was properly before the court). The Court therefore considers the merits of defendant's motion for compassionate release.

### B. "Extraordinary and Compelling" Circumstances

The Court next considers whether "extraordinary and compelling reasons warrant such a reduction" in defendant's term of imprisonment. 18 U.S.C. § 3582(c)(1)(A). Here, defendant's

first contention is that "extraordinary and compelling reasons" are shown because his mother's medical situation has rendered her incapacitated and defendant is "the only available caregiver" for her. U.S.S.G. § 1B1.13(b)(3)(C). Defendant's second contention is that "extraordinary and compelling reasons" are shown because he received "an unusually long sentence" that should be reduced due to "a change in the law." U.S.S.G. § 1B1.13(b)(6). His third contention is that his rehabilitation should be "considered in combination with other circumstances." U.S.S.G. § 1B1.13(d). The Court considers each of these contentions in turn:

### 1. Defendant Has Not Shown That His Mother Is Incapacitated and He Is the Only Available Caregiver.

In denying defendant's first motion for compassionate release on July 2, 2021, this Court stated that incapacitation of the family member and the unavailability of other caregivers is critical to the analysis of whether the circumstances are truly extraordinary and compelling. Dkt. # 432 at 8–9. In 2021, this Court concluded that defendant had "presented insufficient evidence that his mother, Mrs. Roueche, is incapacitated and that he is the only available caregiver." *Id*. at 9. Although the Court remains sympathetic to the challenges Mrs. Roueche is facing, it again concludes that defendant has presented insufficient evidence that his mother is incapacitated and that defendant is the only available caregiver.

Mrs. Roueche's current description of her circumstances (Dkt. # 450-1 at 16) is quite similar to the description she provided this Court in 2021 (Dkt. # 427, Dkt. # 432 at 9–10). She suffers from a heart condition that is being managed through medication and a pacemaker. Dkt. # 450-1 at 16, ¶ 9. She reports "severe hypertension," also managed by medication. *Id*., ¶ 10.

She reports arthritis in both knees that makes it impossible to climb stairs and difficult to stand, making it "a great challenge for me to shop on my own, particularly when I have to stand in line." *Id.*, ¶ 11. She reports challenges with cataracts, however she also states that "I am able to drive" for short distances during daylight "when I'm faced with an urgent need." *Id.*, ¶¶ 12, 14. In addition, defendant states that "recently" Mrs. Roueche was taken to the doctor by a friend, suggesting that Mrs. Roueche has at least some community support when it comes to traveling for medical care. Dkt. # 450-1 at 17, ¶ 8. Mrs. Roueche views her situation as "quite desperate," stating that "I am unable to properly care for myself without assistance." Dkt. # 450-1 at 16, ¶ 16. Without diminishing Mrs. Roueche's concerns, on the present evidence the Court does not find that Mrs. Roueche is incapacitated in the sense of being incapable of any self-care and totally confined to a bed or chair. *See United States v. McKinney*, No. CR18-096RSM, 2020 WL 607698, at *4–5 (W.D. Wash. Oct. 15, 2020) (collecting cases that look, in these circumstances, to the Bureau of Prison's definition of incapacitation, which says an incapacitated person "cannot carry on any self-care and is totally confined to a bed or chair.").

In addition, defendant has failed to show that he is the only available caregiver for Mrs. Roueche. As in 2021, defendant's younger daughter, Chanel, is currently living in Abbotsford, British Columbia, where she works at a hair salon. *Compare* Dkt. # 432 at 10, *with* Dkt. # 450-1 at 19, 20. "Abbotsford is only around a half-hour drive or thirty-five minute bus ride from the city where Mrs. Roueche resides." Dkt. # 432 at 10. Therefore, as in 2021, "it is unclear why [Chanel] would be totally unable to assist Mrs. Rouche." *Id*. Defendant's daughter Chaylin lives, as she did in 2021, in Kelowna, British Columbia, which is around three hours away from Mrs.

ORDER DENYING DEFENDANT'S THIRD
MOTION FOR COMPASSIONATE RELEASE - 8

Roueche. *Compare* Dkt. # 432 at 10, *with* Dkt. # 450-1 at 19, 20. As in 2021, "it is unclear why relocation is not an option for Mrs. Roueche." Dkt. # 432 at 10. Finally, as in 2021, defendant has not mentioned his oldest daughter, Claudia, nor has he explained why Claudia would be unable to assist Mrs. Roueche. *Id.*, n.4. Defendant also has a brother, but defendant's motion fails to offer a declaration from his brother explaining why neither defendant's brother nor the brother's two daughters can assist with Ms. Roueche's care. Dkt. # 453 at 10.

Therefore, as in 2021, the record here does not establish extraordinary and compelling circumstances connected to Mrs. Rouche's health that support a reduction in defendant's sentence.

## 2. Defendant Has Already Received a Sentence Reduction Pursuant to Amendment 782 and Does Not Qualify for Another Reduction.

In support of his argument for a sentence reduction due to "a change in the law" as described in U.S.S.G. § 1B1.13(b)(6), defendant again raises Amendment 782 to the Guidelines, which reduced the base offense levels by two levels for most drug quantities. *See* U.S.S.G. § 2D1.1. Notably, defendant has already benefitted from the passage of Amendment 782. Dkt. # 414. In 2019, defendant filed a motion under 18 U.S.C. § 3582(c)(2), seeking a reduction in his sentence based on Amendment 782. Dkt. # 407. This Court recognized that the Amendment, retroactively applied, resulted in a reduction in defendant's base offense level from 38 to 36, which in turn reduced his Guidelines range to 262–324 months. Dkt. # 414. In light of this change and the relevant § 3553(a) factors, this Court reduced defendant's sentence by 72 months and sentenced him to 288 months, a sentence in the middle of the new Guidelines range. *Id.*

Defendant now seeks an additional two-level reduction of his base offense level pursuant to U.S.S.G. § 1B1.13(b)(6), arguing that his sentence is "unusually long" and "a change in the law"—Amendment 782—has produced "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." Dkt. # 450 at 9–11. Specifically, defendant argues that his money laundering offense was "entirely . . . dependent on the drug-trafficking offenses." *Id*. "Thus," defendant contends, "if a reduction was appropriate for the drug-trafficking offense levels, then it was appropriate for the money laundering as well" and defendant should now receive an additional two-level reduction on the money laundering offense. *Id*.

As an initial matter, defendant has not shown that his current sentence, which is in the middle of the new Guidelines range, is "unusually long." U.S.S.G. § 1B1.13(b)(6). *See Rita v. United States*, 551 U.S. 338, 346–347 (2007) (finding a presumption of reasonableness for a "within-Guidelines" sentence). Nor has defendant shown that a "gross disparity" exists between his current sentence and the sentence he would likely receive now. U.S.S.G. § 1B1.13(b)(6). Substantively, defendant's argument for a new two-level reduction appears to rest on the mistaken belief that defendant's original base offense level, 38, was the sum of two numbers: one number that was connected to his money laundering offense and a separate number that was connected to his drug-trafficking offenses, with only the later number having received a two-level reduction in 2019. That is not how defendant's original base offense level was calculated. *See* PSR ¶ 83–86.

ORDER DENYING DEFENDANT'S THIRD
MOTION FOR COMPASSIONATE RELEASE - 10

Following the Guidelines, before any calculation occurred defendant's money laundering offense was grouped with his underlying drug-trafficking offenses. PSR ¶ 84 (Citing U.S.S.G. § 3D1.2(b)). Then, because the guideline application for money laundering provided the highest offense level, the guideline for money laundering was used to determine defendant's offense level. PSR ¶ 85 (Citing U.S.S.G. § 3D1.3). The guideline application for money laundering "states that the base offense level [for money laundering] is the offense level for the underlying offense from which the laundered funds were derived." PSR ¶ 86 (Citing U.S.S.G § 2S1.1). Therefore, the base offense level for defendant's money laundering offense incorporated the base offense level for his drug-trafficking offenses. *Id*. Rather than involving two separate numbers, defendant's base offense level calculation involved just one number, 38, and that number reflected the offense level for both the money laundering *and* drug trafficking crimes. *Id*.

As discussed above, in 2019 defendant received a two-level reduction to this base offense level that changed it from 38 to 36 and resulted in his sentence being reduced by 72 months. Dkt. # 414. As defendant correctly points out, that reduction was spurred by Amendment 782's reduction to the base offense level for drug quantities. *Id*., Dkt. # 450 at 10. However, because of the interrelated nature of the offense levels at issue in this case, this Court's decision to reduce the base offense level for defendant's drug trafficking offenses in 2019 necessarily reduced the base offense level for defendant's money laundering offense. Put another way: in asking this Court to now reduce defendant's base offense level on the money laundering offense, defendant is asking this Court to do something it has already done.

ORDER DENYING DEFENDANT'S THIRD
MOTION FOR COMPASSIONATE RELEASE - 11

Defendant cites two cases in support of his argument for an additional two-level reduction on the money laundering offense. Dkt. # 450 at 11. Neither case supports his position. First, defendant cites *United States v. Torres*, where, as here, the defendant's money laundering offenses were grouped with his drug trafficking offenses. 856 F.3d 1095, 1097 (5th Cir. 2017). As here, Torres' money laundering offense was used to determine his base offense level, with the base offense level for the money laundering derived from the underlying drug trafficking offenses, pursuant to U.S.S.G § 2S1.1. *Id*. As here, a requested two-level reduction under Amendment 782 was at issue. *Id*. However, contrary to defendant's assertions, the most relevant holding from *Torres* is that in these situations, "any reduction or increase in the drug-trafficking level would induce a corresponding change in the money-laundering level." *Torres*, 856 F.3d 1095 at 1099. Under *Torres*, therefore, defendant already received a "corresponding change in the money-laundering level" when this Court reduced his drug-trafficking level in 2019. *Id*., Dkt. # 414.

Second, defendant cites *United States v. Arroyos Fernandez*, where, as here and in *Torres*, the defendant was guilty of both drug trafficking and money laundering. *United States v. Arroyos Fernandez*, No. 105CR00209MRWCM1, 2019 WL 3783283, at *1 (W.D.N.C. Aug. 12, 2019). As here and in *Torres*, Arroyos Fernandez's offense level for the drug trafficking "became the base offense level for the money laundering count" pursuant to U.S.S.G § 2S1.1. *Id*. Applying the holding in *Torres* to Arroyos Fernandez's request for an offense level reduction under Amendment 782, the *Arroyos Ferndandez* court found that while "[d]efendant's offense levels for both counts of conviction were dependent on the drug-trafficking offense level" and

ORDER DENYING DEFENDANT'S THIRD
MOTION FOR COMPASSIONATE RELEASE - 12

"[d]efendant is entitled to a reduction under Amendment 782 of both counts of conviction," the total offense level reduction for both counts of conviction was a two-level reduction—not, as defendant proposes here, a four-level reduction (with two levels reduced for the money laundering offense and two levels reduced for the drug trafficking offenses). *Id*. Therefore, *Arroyos Ferndandez* also demonstrates that in this case, defendant has already received the full two-level reduction he is entitled to under Amendment 782.

Defendant further argues that yet another two offense levels should be deducted because at sentencing this Court improperly applied a two-level enhancement for defendant's money laundering offense. Dkt. #450 at 11. This argument is without merit. After considering proposed enhancements that could have resulted in a life sentence for defendant, this Court sentenced defendant based on a total offense level of 41. Dkt. # 371 at 38. That is precisely the total offense level requested by defendant. *Id*., Dkt. # 339 at 10.

In sum, defendant has failed to show that his sentence is "unusually long" and "a change in the law"—Amendment 782—has produced "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6). Therefore, defendant has not demonstrated an "extraordinary and compelling reason" under U.S.S.G. § 1B1.13(b)(6) for an additional reduction in his sentence.

### 3. Rehabilitation Alone Is Insufficient.

Rehabilitation of the defendant "is not, by itself, an extraordinary and compelling reason" that justifies compassionate release. U.S.S.G. § 1B1.13(d) (citing 28 U.S.C. 994(t)). While this Court continues to commend defendant's rehabilitation efforts, they do not factor into the

ORDER DENYING DEFENDANT'S THIRD
MOTION FOR COMPASSIONATE RELEASE - 13

analysis of his current motion given the insufficiencies described in defendant's arguments relating to his mother's health and Amendment 782.

### C. The 18 U.S.C. § 3553(a) Factors

Having determined that defendant has not made the requisite showing of extraordinary and compelling reasons for compassionate release, the Court need not analyze whether a reduction in defendant's sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a).

### IV. Conclusion

For all the foregoing reasons, defendant's third motion for compassionate release (Dkt. # 450) is DENIED.

IT IS SO ORDERED.

DATED this 4th day of November, 2024.

Robert S. Lasnik
United States District Judge